RMT:MTK
F.#2014R00043

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

ANTON BOGDANOV,
    also known as "Kusok,"

             Defendant.
- - - - - - - - - - -X

17-M-82

SECOND AMENDED COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR ARREST WARRANT

(18 U.S.C. §§ 641, 1028A(a)(1), 1030(a)(2)(B) & (C), 1349, 1956(h), 2 and 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

        Seth D. Rose, being duly sworn, deposes and states that he is a Special Agent with the Internal Revenue Service - Criminal Investigation ("IRS-CI") duly appointed according to law and acting as such.

Count One: Conspiracy to Commit Wire Fraud

        In or about and between June 2014 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTON BOGDANOV, also known as "Kusok," together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the United States, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: electronic communications to computers and servers in the United States and elsewhere, emails and

other online communications, and monetary transfers, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

Count Two: Unauthorized Computer Intrusions

In or about and between June 2014 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTON BOGDANOV, also known as "Kusok," together with others, did intentionally access a computer without authorization and exceeded authorized access, and thereby obtained infomation from any department and agency of the United States, to wit: tax transcripts from the United States Department of the Treasury, the value of which exceeded $5,000.

(Title 18, United States Code, Sections 1030(a)(2)(B), 2 and 3551 et seq.)

Count Three: Unauthorized Computer Intrusions

In or about and between April 2016 and December 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTON BOGDANOV, also known as "Kusok," together with others, did intentionally access a computer without authorization and exceeded authorized access, and thereby obtained information from a protected computer, to wit: tax filings from tax preparation firms, for the purposes of commercial advantage and private financial gain.

(Title 18, United States Code, Sections 1030(a)(2)(C), 2 and 3551 et seq.)

Count Four: Theft of Government Property

In or about between June 2014 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTON BOGDANOV, also known as "Kusok," together with others, did knowingly, willfully and without lawful authority embezzle, steal, purloin and convert to his own use and the use of another records, vouchers, money and things of value of the United States and a department and agency thereof, to wit: income tax refunds from the U.S. Department of the Treasury, the aggregate value of which exceeded $1,000, and did receive, conceal and retain the same with intent to convert it to his use and gain, knowing it had been embezzled, stolen, purloined and converted.

(Title 18, United States Code, Sections 641, 2 and 3551 et seq.)

Count Five: Money Laundering Conspiracy

In or about and between June 2014 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTON BOGDANOV, also known as "Kusok," together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the

Case 1:17-mj-00082-ST   Document 5   Filed 12/04/18   Page 4 of 14 PageID #: 20

4

proceeds of one or more specified unlawful activities, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, and wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

Count Six: Aggravated Identity Theft

In or about and between June 2014 and November 2016, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant ANTON BOGDANOV, also known as "Kusok," together with others, during and in relation to the wire fraud conspiracy charged above, did knowingly and intentionally transfer, possess and use, without lawful authority, one or more means of identification of other persons, to wit: social security numbers and other personally identifiable information, knowing that these means of identification belonged to said persons.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), 1028A(c)(4), 2 and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:

1.  I have been a Special Agent with IRS-CI since 2014.  I am responsible for conducting and assisting in investigations into the activities of individuals and criminal groups responsible for crimes related to computers and use of the internet, including access device fraud and tax fraud.  I have participated in investigations involving search warrants and arrest warrants.  As a result of my training and experience, I am familiar with the

techniques and methods of operation used by individuals involved in criminal activity to conceal their activities from detection by law enforcement authorities.

2. The facts in this affidavit come from my personal observations, my training and experience, information obtained from other agents, cooperating witnesses and a review of records and documents. Because the purpose of this affidavit is limited to demonstrating probable cause for the requested warrant, it does not set forth all of my knowledge about this matter. In addition, when I rely on statements made by others, such statements are set forth only in part and in substance unless otherwise indicated.

A. <u>The Criminal Scheme</u>

3. In February 2014, the Federal Bureau of Investigation ("FBI") identified and arrested an individual for committing access device fraud. Following the arrest, the individual became a cooperating witness ("CW-1") for the government.[1] Following his/her arrest, CW-1 continued to receive and carry out instructions from individuals with whom he/she worked.

4. Pursuant to information provided by CW-1, the FBI began investigating a co-conspirator ("CW-2"). In February 2016, the FBI arrested CW-2. CW-2 also began cooperating with the government's investigation.[2]

---

[1] CW-1 has since pleaded guilty to, among other crimes, access device fraud and aggravated identity theft. CW-1 is cooperating in the hopes of receiving leniency at sentencing, and his/her information has proven reliable and has been corroborated.

[2] CW-2 has since pleaded guilty to, among other crimes, access device fraud, theft of government property and aggravated identity theft. CW-2 is cooperating in the hopes of receiving leniency at sentencing, and his/her information has proven reliable and has been corroborated.

5.  Through interviews, a review of chat logs and other investigation, the FBI learned that CW-1 provided, among other things, "cashing" services for CW-2 since in or around March 2013. Specifically, CW-2 fraudulently obtained prepaid debit cards using stolen personally identifiable information ("PII") and loaded the cards with funds obtained through a variety of criminal schemes, including income tax refund fraud and ransomware. CW-1 was responsible for "cashing out" the prepaid debit cards and forwarding the funds (less CW-1's fee) at the direction of CW-2.[3]

6.  CW-2 frequently provided his/her services (i.e., obtaining, loading and cashing out fraudulently obtained prepaid debit cards) to others whom he/she met in various online criminal forums.

7.  On or about June 25, 2014, an individual with the online moniker "Kusok" sent a private message to CW-2 asking if CW-2 could provide prepaid cards that could receive direct deposits from the Internal Revenue Service ("IRS").[4] In this message, Kusok provided his jabber account[5] to CW-2 for further communication.

---

[3] "Cashing out" means withdrawing the funds from the debit cards. That can be done through a variety of mechanisms, including withdrawing cash from banks or ATMs and electronically transferring the funds from the debit cards to other accounts.

[4] The FBI was able to recover chats between CW-2 and Kusok from CW-2's computer following CW-2 arrest and also preserved chats between CW-2 and Kusok post-dating CW-2's arrest.

[5] Jabber is a chat protocol that allows for private hosting of servers, in contrast to corporate hosting by companies such as Yahoo! and Google. Moreover, jabber allows for encryption, which permits users to keep their communications private, even from the administrators of the servers through which their communications were routed. Jabber is thus known as a secure chat protocol that can be used by criminals to evade detection by law enforcement.

8.    On or about July 25, 2014, Kusok told CW-2, in sum and substance, that he had the ability to file for hundreds of thousands of dollars in business tax refunds using what CW-2 understood to be fraudulently obtained information. Kusok sought prepaid debit cards from CW-2. It was CW-2's understanding that Kusok provided the prepaid debit card information[6] to the IRS in the fraudulent tax filings as the account to which the return should be deposited.

9.    On July 27, 2014, Kusok asked CW-2 to provide 21 prepaid debit cards. In response, CW-2 electronically sent Kusok 10 fraudulently obtained prepaid debit cards that same day, and an additional 11 the next day.[7] CW-2 also told Kusok that he/she could supply additional prepaid debit cards if Kusok provided PII of individuals with which to apply for prepaid debit cards.

10.    On or about July 31, 2014, Kusok informed CW-2 that there was money on some of the prepaid debit cards that CW-2 had previously provided. CW-2 informed Kusok that those prepaid debit cards had in fact already been cashed. Kusok provided a WebMoney[8] address to which CW-2 was to send Kusok's share of the proceeds, which was 55 percent.

11.    CW-2 understood that Kusok prepared fraudulent tax filings using PII and banking, earnings and other information from the tax transcripts of tax filers from prior

---

[6]    Certain prepaid debit cards have routing numbers and account number and can receive deposits in the same fashion as bank accounts.

[7]    CW-2 did not send the physical cards, but provided Kusok electronically with the information from the cards for Kusok to use with his tax filings.

[8]    WebMoney is a virtual currency exchange based in Russia, which uses WebMoney units (WM) as currency.

years.[9] As part of their working arrangement, CW-2 asked Kusok to teach him/her how to apply for tax refunds. On or about August 2, 2014, Kusok electronically sent CW-2 instructions on how to unlawfully obtain tax transcripts from the IRS through its website.

12. On or about August 20, 2014, Kusok electronically sent CW-2 PII for 10 individuals and requested that CW-2 apply for prepaid debit cards that could accept government payment, and specifically mentioned Akimbo Card. Based on my training and experience, "cards that can accept government payment" refers to prepaid debit cards that have associated routing and account numbers, like a bank account.

13. On or about September 16, 2014, Kusok sent additional PII to CW-2 and said he could provide PII for 10 to 15 individuals per week.

14. Thereafter, until approximately January 2016, Kusok continued to send PII to CW-2, and CW-2 used the PII to open prepaid debit cards for use by Kusok in the tax refund fraud scheme. After CW-2 obtained the prepaid cards, he/she would electronically send the card information to Kusok for use in fraudulent tax filings. Approved tax refunds would then be deposited onto the prepaid debit cards, whereupon CW-2 would instruct CW-1 to cash out the cards.

15. Between approximately September 2014 and January 2016, according to CW-2, Kusok sent PII for more than 350 individuals, which PII CW-2 used to obtain prepaid debit cards. Of those, based on the addresses listed, at least 10 of the individuals resided in the Eastern District of New York. Analysis of a file found on CW-2's computer

---

[9] A tax transcript is a copy of a tax filer's prior tax return filing. The IRS keeps records of tax transcripts, and obtaining an individual's tax transcript would provide a criminal sufficient information with which to file a fraudulent return in the victim's name.

confirms CW-2's account of the criminal scheme. Analysis of records found on CW-2's computer also confirms that CW-2 processed at least $445,000 in fraudulent tax filings for Kusok in 2015. In subsequent chats between CW-2 and "Kusok," Kusok confirmed that his scheme involved using unlawfully obtained tax transcripts from the IRS website.

16. The Department of Treasury has verified that more than $1,000,000 in tax refund monies were issued pursuant to this fraudulent scheme in 2015 alone. The Department of Treasury has based its loss calculation on a comparison of CW-2's records with its own records of refunds requested and issued as well as an analysis of common IP addresses and Device IDs[10] used by Kusok to submit false tax filings.

17. On or about April 15, 2016, Kusok told CW-2 in a consensually monitored jabber chat that he had purchased remote desktop protocol ("RDP") access to the computer networks of numerous tax preparation firms. Kusok stated that he electronically changed the tax filings of the firm's clients so that the account and routing numbers listed in filings (and to which refunds were to be paid) were those of his prepaid debit cards. Kusok stated he paid approximately $3,000 to $4,000 for each set of RDP access credentials he obtained. Kusok did not specify from whom he had obtained the RDP credentials, but based on my training and experience, I am aware that stolen credentials such as RDP credentials can be purchased via online criminal forums.

---

[10] A Device ID is an algorithm comprised of different characteristics of any electronic device that accesses the Treasury Department's tax filing system. The specific characteristics that are used to generate a particular device's Device ID may differ depending on the software utilized by the device. Device IDs can be used to identify when the same device has logged onto the Treasury Department's tax filing system.

18. Based on my training and experience, I am aware that RDP credentials allow a user to log into a computer network from a remote location. If a criminal such as Kusok connects remotely to a tax preparation firm's computer system using stolen credentials of an authorized user, he can alter the tax returns of the firm's clients. Specifically, RDP access would allow Kusok to change the account and routing numbers of the accounts to which the tax refunds are to be deposited and substitute that with account information from the prepaid debit cards provided by CW-2. Kusok told CW-2 that, while he had access to a firm's network, he also typically downloaded the preparation firm's client data for future use.

19. On or about April 21, 2016, Kusok told CW-2 in a consensually monitored jabber chat he had three databases containing tax information for approximately 1,000 individuals, which he said he obtained from tax preparation companies through RDP access. Kusok explained that he was planning to purchase RDP access to another tax preparation firm for $2,700. Kusok further stated that he believed he would then have access to tax information for an additional 3,000 individuals.

20. On or about June 10, 2016, Kusok told CW-2 in a consensually monitored jabber chat that he had a 90 percent success rate in that year's tax season, and that he used RDP access to change the direct deposit information on the tax filings, which amounted to more than $2,000,000 in refunds. However, Kusok reported that the refunds were never released by the IRS onto the prepaid debit card accounts. Kusok believed the tax refunds were blocked by the IRS because the name on the prepaid debit cards did not match the name on the tax return filing.

21. By tracking the prepaid debit cards fraudulently obtained by CW-2 (and later cashed out by CW-1), the FBI, in conjunction with the IRS, was able to identify tax filings affected by Kusok's criminal scheme.[11] The investigation identified six accounting firms in the United States that prepared tax returns in which CW-2's prepaid debit cards were listed as the direct deposit account for the return. Interviews of these firms confirm that they were the subject of an RDP breach and that the firms did not intentionally submit those prepaid debit card account numbers with the filings. One of the firms is located in the Eastern District of New York.

22. On or about November 11, 2016, Kusok sent to CW-2 PII belonging to an individual that the FBI has confirmed is a U.S. citizen. Kusok stated that he obtained the PII by obtaining the tax transcript for this individual from the IRS website. Kusok indicated that he wanted CW-2 to obtain a prepaid debit card using the PII.

23. On or about December 31, 2016, Kusok sent CW-2 a private message, which message contained PII for approximately 30 individuals. The investigation revealed that most of these individuals reside in Idaho. Together with the IRS, the FBI identified an accounting and tax preparation firm as the source of the PII. An interview with the firm revealed that it was recently the victim of an unauthorized RDP access to its network. Investigation further revealed that in and around December 15, 2016, someone had created folders in one of the firm's network user accounts and placed more than 500 copies of tax

---

[11] CW-1 was proactively cooperating with the government's investigation for the entire time period during which CW-2 and Kusok worked together and was responsible for "cashing out" the prepaid debit cards. As such, the FBI was able track the prepaid cards that CW-1 cashed at CW-2's direction.

returns of the firm's clients in these folders. The firm confirmed that these folders had not been created by any of its employees. Additionally, these folders had been compressed into .rar files.[12] Based on my training and experience, I believe that the compression of these tax returns into .rar files is indicative of that data having been exfiltrated, because compressing data renders it easier to transmit via the internet.

B. Kusok is the Defendant Anton Bogdanov

24. As set forth below, the investigation has revealed that Kusok is an individual named "Anton Bogdanov," that is, the defendant.

25. Investigation also revealed that the user Kusok on the online criminal forum Verified used the ICQ number 275232. User Kusok on online criminal websites Cardingworld.cc and Carder.su also used the ICQ number 275232. On Cardingworld.cc, Kusok registered using the email address durmalin88@mail.ru (the "durmalin88 email").

26. The durmalin88 email is also the registrant for the domain ba-bola.com and multiple other domains. The registrant's name on these domains is "Anton Bogdanov." The registrant's telephone number is a number ending in 1059 (the "1059 number"), which resolves to Moscow, Russia.

27. The durmalin88 email is also the recovery email for an Apple account. Anton Bogdanov is listed as the name on the account, and the primary email address for the Apple account is babolaru@gmail.com.

---

[12] Rar files are data containers, storing one or more files in compressed form. Compressing data makes the data easier to transfer.

28. Records received from Google reveal that both babolaru@gmail.com and another email account, b0gdap777@gmail.com, list the durmalin88 email as the recovery email for each. The name on these gmail accounts is Cyrillic for Anton Bogdanov. These records also reveal that these gmail accounts are associated with the 1059 number.

29. Investigation also revealed a mail.ru domain that contains a user profile page for the durmalin88 email account. The name on the profile page is "Anton Bogdanov" (translated from Russian) and contains approximately 20 user-uploaded photographs.[13]

30. A search on Russian social networking site Vkontakte (commonly referred to as "VK") for user "Anton Bogdanov" revealed an account containing over 200 user-uploaded photographs, which included the same 20 photographs found in the mail.ru domain associated with the durmalin88 email. Photos posted on this account repeatedly show one particular male, whom I assess to be BOGDANOV.

---

[13] This profile page is linked to the durmalin88 email, which is also hosted by mail.ru and appears to function like a social networking page.

14

WHEREFORE your deponent respectfully requests that an arrest warrant issue for the defendant ANTON BOGDANOV, also known as "Kusok," so that he may be dealt with according to law.

_____
Seth D. Rose
Special Agent, IRS-CI

Sworn to before me this
4th day of December 2018

_____
THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK